IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| REBECCA LIN ASHBACH, | ) | No. 41157-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARREN JAMES WHITE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

HILL, J. — Rebecca Ashbach filed a petition for a protection order against her former fiancé, Darren White. Ashbach requested protection for herself and her four children, three of whom are not related to White. The trial court granted Ashbach a domestic violence protection order (DVPO), finding that White committed domestic violence by exerting coercive control, but not sexual assault. However, the court declined to extend the protection order to the children and did not require White to surrender his weapons. The court also permitted White's attorney to retain intimate images of Ashbach for the purpose of defending White against a potential criminal prosecution.

Ashbach appeals, arguing the trial court erred by (a) failing to follow the procedures in RCW 7.105.200(9)(b) before admitting evidence of Ashbach's prior sexual history, (b) excluding the children from the DVPO when they were exposed to domestic violence, (c) refusing to require White to surrender his deadly weapons when he presented a credible threat, and (d) allowing White's attorney to retain intimate images of Ashbach.

We reverse the trial court because it failed to follow the procedures in RCW 7.105.200(9)(b) before admitting White's evidence of Ashbach's prior sexual history. As the record suggests, this evidence may have influenced the court's decisions relating to credibility, burden of proof, and whether to include the children in the DVPO or prohibit White from possessing weapons. Therefore, we remand the matter for a new hearing. As the intimate images will likely be at issue again on remand, we address the court's decision to allow defense counsel to retain a copy with strict limitations, concluding the court was within its discretion to rule as it did.

## BACKGROUND

Ashbach and White began dating in May 2023 when Ashbach was 30 years old and White was 58 years old. Ashbach gave birth to their child, A.W., in February 2024. Ashbach was also the mother of three other children who were not related to White: W.A., A.A., and J.H. In August 2024, the family moved to Medford, Massachusetts for

White to continue his education. Both before and after relocating to Massachusetts, Ashbach alleged that White engaged in degrading behavior and committed several violent, nonconsensual sexual acts against her. In the fall of 2024, Ashbach told White she did not want to continue the relationship, but they continued living in the same home. Ashbach began keeping a record of White's behavior.

On November 27, 2024, Ashbach reported to the Medford Police that White sexually assaulted her two days prior. Ashbach stated that she was planning to move back to Washington with her children and that she did not want White to know that she reported the incident to the police. On January 2, Ashbach reported another incident, this time alleging White made a threat against W.A. Officer Stanton Hurd conducted the interview and completed a "High Risk Assessment." Clerk's Papers (CP) at 81-87. Officer Hurd concluded that this was not a safe environment for Ashbach or her children and said he would file a report with the Massachusetts Department of Children and Families (DCF) based on the threat made to the child. On January 27, 2025, DCF sent Ashbach a letter determining that the allegations of neglect against White created "substantiated concern." CP at 92.

Ashbach received a protection order in Massachusetts that expired on January 22, 2025. Ashbach moved with the children back to Washington before the order expired. On January 17, Ashbach filed a petition for a DVPO in Whitman County Superior Court

for herself and her four children. She also requested immediate protection. In support of her petition, Ashbach attached her self-kept record of incidents involving White, many of which included graphic sexual details. The trial court issued a temporary protection order for Ashbach and her children.

The hearing was continued twice. On February 19, Ashbach filed a declaration attaching the police reports from the Medford Police, the DCF decision letter, an e-mail from a DCF employee that White had discovered the shelter Ashbach was residing at with her children, and White's social media posts, which Ashbach perceived as threatening.

The day before the hearing, White filed several exhibits, including two declarations. In his own declaration, White denied the allegations that he ever engaged in nonconsensual sex with Ashbach, threatened and abused the children, or engaged in coercive conduct. He discussed Ashbach's sexual behavior and tendencies in detail.

The second declaration was from Stacy Tollefson. Tollefson was a friend of White and has never met Ashbach. Tollefson described Ashbach's sexual conduct with White, which she claims she learned from a conversation with White in November 2025.

The hearing occurred as scheduled on February 26. The court denied Ashbach's motion to strike portions of the two declarations submitted by White relating to past

4

sexual conduct between the parties. The court then heard argument on the merits of the petition.

In its ruling, the court noted that this was a difficult decision given the nature of the evidence and the lack of communication between the parties following the alleged incidents. The court determined that the evidence concerning the alleged sexual assaults was inconclusive. However, it noted White failed to respond to multiple allegations that amounted to physical assault or coercive control. As for the children, the court stated that Ashbach never alleged that White threatened or harmed A.W. and that White did not engage in domestic violence against the children. The court issued a DVPO between White and Ashbach only, effective for one year, based on White's exertion of coercive control. The DVPO prohibited White from possessing or distributing intimate images of Ashbach.

On March 3, Ashbach filed a "Motion for Reconsideration," claiming that the court improperly excluded the children from the DVPO and failed to require White to surrender firearms or deadly weapons. CP at 237-46. White filed a response on March 10. He also filed his own "Motion for Reconsideration," arguing the trial court erred in finding his actions constituted coercive control. CP at 258-62. He also requested to retain the intimate photos of Ashbach through his attorney, as potential evidence in his defense, if criminal charges were filed. On March 19, the trial court denied both motions. The

court wrote that Ashbach's evidence "*if true*, would support the inclusion of some of the children in the [DVPO]. However, the court specifically considered those allegations, and found that those allegations were not proven by a preponderance of the evidence . . . Nearly all of the 'Evidence Relied Upon' in the Motion for Reconsideration was specifically disavowed and denied by [White], and was not verified by any third party." CP at 270-71. The order directed White to delete intimate images of Ashbach that were in his possession but allowed him to provide a copy of the images to an attorney to aid in his potential defense.

## ANALYSIS

### *Standard of Review*

We review a trial court's decision to grant or deny a protection order for abuse of discretion. *Rodriguez v. Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017). A trial court abuses its discretion if its decision is manifestly unreasonable, based on untenable grounds, or exercised for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

We review issues of statutory construction de novo. *State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We

discern the plain meaning of a statute "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

*Applicable Law*

In DVPO hearings, evidence of the petitioner's prior sexual history or reputation is generally inadmissible. RCW 7.105.200(9)(a). However, the respondent may introduce evidence of the petitioner's past sexual conduct with the respondent in order to demonstrate that the petitioner consented to the sexual conduct alleged in the petition. RCW 7.105.200(9)(a)(i).

Before admitting the evidence, the statute requires the trial court to follow a specific procedure. First, the respondent must file a written motion six judicial days before the protection order hearing. Furthermore, "[t]he motion must include an offer of proof of the relevancy of the proposed evidence and reasonably specific information as to the date, time, and place of the past sexual conduct between the petitioner and the respondent." RCW 7.105.200(9)(b). Second, if the court determines the offer of proof is relevant to whether the victim consented, it must conduct an in camera hearing. RCW 7.105.200(9)(b). At this hearing, the court may only admit the evidence if it finds that the evidence is both relevant and the probative value outweighs the danger of unfair

7

prejudice. RCW 7.105.200(9)(b). Ashbach contends the trial court improperly admitted evidence of her past sexual conduct with White without following the procedure in RCW 7.105.200(9)(b). We agree.

White offered two declarations describing past sexual conduct with Ashbach. At the DVPO hearing, Ashbach moved to strike the sections within these declarations discussing Ashbach's past sexual conduct. The court concluded that the evidence was admissible under RCW 7.105.200(9). The court reasoned that RCW 7.105.200(9)(b) outlined the process for admitting evidence of the petitioner's sexual conduct with a third party, not the respondent. Because the evidence at issue concerned the petitioner's sexual history with the respondent, the court did not believe it was required to follow the procedural requirements.

We agree with Ashbach that the trial court misinterpreted RCW 7.105.200(9). RCW 7.105.200(9)(a) outlines the admissibility of evidence pertaining to the petitioner's prior sexual activity or reputation. RCW 7.105.200(9)(a)(i) describes when evidence of the petitioner's past sexual conduct with the respondent is admissible. Without any modifying language, RCW 7.105.200(9)(b) outlines the procedure for the trial court to determine the admissibility of the evidence described in RCW 7.105.200(9)(a)(i). There is no language in the statute restricting application of the procedure in RCW 7.105.200(9)(b) to evidence of the petitioner's sexual activity with a third party.

Consequently, we interpret RCW 7.105.200(9)(b) to apply to the evidence described in RCW 7.105.200(9)(a)(i), which includes Ashbach's past sexual conduct with White.

Both White's and Tollefson's declarations described Ashbach's prior sexual history with White, which was directly relevant to whether the petitioner consented to the sexual conduct outlined in the petition under RCW 7.105.200(9)(a)(i). White did not provide six days' notice or provide reasonably specific information regarding the date and time of the alleged instances. The court did not conduct a hearing in camera or make a finding regarding the relevancy and probative value of the evidence.

Due to the nature of the evidence, the trial court's consideration of Ashbach's prior sexual history was likely material to its other findings regarding whether to include the children in the protection order or restrict White from possessing weapons. As we reverse and remand for a new hearing, these alleged errors are not addressed.

*Intimate Images*

As the issue is likely to occur again on remand, we elect to address Ashbach's claim that the trial court erred by allowing White's attorney to retain a copy of intimate images. Ashbach contends the trial court was not authorized to grant this form of relief because it is not explicitly authorized by the domestic violence statutes and it violates the spirit of the protection order statutes. Ashbach claims the trial court should have provided strict evidentiary controls, protective orders, or in camera review. We disagree.

When issuing a protection order, the trial court has broad discretion to grant relief,

including the ability to:

> Restrain the respondent from possessing or distributing intimate images, as defined in RCW 9A.86.010, depicting the petitioner including, but not limited to, requiring the respondent to: Take down and delete all intimate images and recordings of the petitioner in the respondent's possession or control; and cease any and all disclosure of those intimate images. The court may also inform the respondent that it would be appropriate to ask third parties in possession or control of the intimate images of this protection order to take down and delete the intimate images so that the order may not inadvertently be violated;

RCW 7.105.310(1)(u).

The statute grants the trial court discretion to restrain the respondent from

possessing or distributing intimate images, which the court exercised. As the court noted

in its findings, "[White's] basis for seeking to retain a copy of intimate images/videos of

[Ashbach], to aid in defense against possible criminal charges, is reasonable, so long as

[White] does not personally retain the images/videos." CP at 274. Based on these

findings, the court ordered:

> [White] shall delete all intimate images and/or videos of [Ashbach] that are in his possession, or otherwise stored remotely (i.e. ''in the cloud''), except that he may relinquish one copy of said images/videos to an attorney for safe keeping for aid in a potential defense. Said attorney shall send written verification to [Ashbach's] counsel that he/she has accepted such images/videos, and shall further verify that he/she will not re-distribute the images/videos except as necessary to aid in his/her defense of [White].

10

No. 41157-5-III
*Ashbach v. White*

CP at 274.

We conclude the court's order did not violate RCW 7.105.310(1)(u). The court properly exercised its discretion by requiring White to delete the images he possessed and permitting White's attorney to retain the images subject to strict limitations.

CONCLUSION

We reverse the trial court and remand for a new hearing because the court did not follow the procedures in RCW 7.105.200(9)(b) before admitting White's evidence of Ashbach's prior sexual history.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Hill, J.

WE CONCUR:

Lawrence-Berrey, J.                                    Murphy, J.

11